## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| JANICE MACKEY and Husband, | ) | |
| NICKEY MACKEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 3:06-1018 |
| v. | ) | Judge Echols |
| | ) | |
| DILLARD TENNESSEE OPERATING | ) | |
| LIMITED PARTNERSHIP, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court is the Motion Of Defendant Dillard Tennessee Operating Limited

Partnership For Summary Judgment (Docket Entry No. 19), to which Plaintiffs filed a Response

(Docket Entry No. 24), and Defendant filed a Reply (Docket Entry No. 29).

## I. FACTS

This is a premises liability case brought by Plaintiff Janice Mackey and her husband, Nickey

Mackey, after Mrs. Mackey fell and fractured her hip at the Dillard's store located at Hickory

Hollow Mall in Nashville, Tennessee. Mrs. Mackey seeks compensatory damages for her injuries

and Mr. Mackey seeks damages for loss of consortium. The Court will refer to Mrs. Mackey as the

Plaintiff. The facts are taken in a light most favorable to the Plaintiff.

On Sunday, March 5, 2006, Plaintiff and her friend, Bobbie Moore, arrived at Dillard's

shortly after the store opened. The women noticed that Dillard's was having a shoe sale, so they

1

headed to the ladies' shoe department. Discounted clearance shoes, marked down 75% in price, were located in shoe boxes on racks set up on the carpeted area of the shoe department.[1]

Dillard's contends that it follows a practice of removing all tissue paper from shoe boxes when shoes are marked down 75%. Tissue paper is white, and the process of removing it from the shoe boxes is called "de-tissuing." Assistant Manager Jason Seavers testified de-tissuing is done "from a cleanliness standpoint and ease of shopping for a customer[.]" (Docket Entry No. 23-2, Seavers Depo. at 19.) Although de-tissuing is supposed to occur in the back storeroom, there is evidence that de-tissuing occurred near the register on the sales floor because employees also were required to wait on customers and tend to other tasks while hundreds, if not thousands, of boxes of shoes were readied for placement on sale racks. Plaintiff disputes whether all of the 75%-off shoes placed on racks on March 5, 2006 had been de-tissued. Moreover, during clearance sales, customers would also try on regular-priced shoes which still had tissue paper in the boxes. A former Dillard's employee, Jeremy Sims, testified that clearance sales were typically chaotic because the customers "would rip the floor apart every day all day[,]" and it was difficult for employees to keep the floor clean. (Docket Entry No. 28-5, Sims Depo. at 47.)

Plaintiff purchased shoes and then left the shoe department to use the restroom. She crossed the tile walkway into the children's department and walked across carpet to the restroom. Upon leaving the restroom, Plaintiff took a different route to return to the ladies' shoe department to rejoin

---

[1]Plaintiff testified the racks were near the tile walkway, while her friend, Ms. Moore, testified the racks were away from the tile walkway near the register. For purposes of summary judgment, the Court will accept Plaintiff's version that the racks were near the tile walkway.

Also, although Plaintiff suggests that clearance sales occur in the Spring, Summer, Fall and Winter, a fair reading of the evidence reveals that there are two clearance sales each year–one at the end of the Fall and Winter season and one at the end of the Spring and Summer season. Dillard's does run other types of shoe sales at different times.

Moore.  As Plaintiff walked on the tile walkway between the children's and ladies' shoe departments, she slipped and fell on the tile floor, fracturing her hip.  Several witnesses testified that a Dillard's shoe department employee, Delia Clark, picked up a piece of shoe box tissue paper from the tile walkway and told Plaintiff she had slipped on the paper.  Plaintiff did not see any tissue paper on the tile walkway before she fell, but once she fell to the floor, she could see the white tissue paper on the white tile floor.  Moore, who used the restroom before the Plaintiff, also did not notice any tissue paper on the tile walkway before Plaintiff's fall, but she saw it after Plaintiff fell.  Dillard's employee Nicole Alvarez saw tissue paper on the tile walkway after Plaintiff fell.

Clark and Moore picked up pieces of tissue paper lying near the Plaintiff.  Clark wadded hers up and placed the wad on a seat cushion, but no one knows what happened to the paper after that.  Neither Plaintiff nor Moore knew how long the tissue paper had been on the floor.  Plaintiff testified that, while she was lying on the floor waiting for emergency personnel, a couple stopped by and told her that the woman had almost fallen earlier at the same spot.

The area sales managers in charge of the store that day, Sandra Hilton and Jenny Millay, responded to the ladies' shoe department after the incident.  Clark informed Hilton and Millay that Plaintiff slipped on shoe box tissue paper.  Alvarez testified that, after Plaintiff fell, the other area sales manager, Millay, took more than one photograph of tissue paper lying on the tile walkway, but Millay testified she took only one photograph.

 On the previous day, Saturday, March 4, 2006, Dillard's had placed three six-foot long tables on the tile walkway between the ladies' shoe department and the children's department.  The tables contained boxes of boots that were marked 50% off in price.  The evidence discloses that use of tables on the tile walkway to display such 50%-off shoe sales occurred "periodically," "rarely,"

3

or "on occasion."  Sometime between close of business on March 4 and the opening of the store on March 5, the shoe boxes and tables were removed from the tile walkway.  Before the store opened on March 5, Sims and Alvarez cleaned up the ladies shoe department and picked up shoe box tissue paper that had fallen on the tile walkway.  Sims believed there was no tissue paper left behind and he testified he would not knowingly have left any on the floor.[2]  Hilton testified that, before the store opened on March 5, at approximately 11:30 a.m., she walked down the tile walkway where Plaintiff later fell and she did not see any shoe box tissue paper on the tile walkway.

In accordance with store practice, 50%-off shoe boxes are not de-tissued, and customers' handling of shoes on sale could cause tissue paper to fall to the floor.  Sims testified that tissue paper "was on the floor a lot" and he was surprised that no one had fallen before.   (Sims Depo. at 46.) Although shoe department employees would try to pick up tissue paper that fell from the sale tables placed in the walkway, customers would come along behind them and drop more tissue paper on the floor.  (Id. at 48.)  Sims himself had slipped on shoe box tissue paper on the stockroom floor, and he saw other employees slip on shoe box tissue paper on the stockroom floor.  However, neither he nor the other employees took a fall like Plaintiff did.  (Id. at 53.)  Sims thought the tissue paper presented a potentially dangerous condition, and the matter was discussed informally by associates working on the floor.  However, the shoe department manager instructed associates to de-tissue shoe boxes on the sales floor so they could attend to customers.  (Id. at 53-54.)  Assistant store manager

---

[2]Plaintiff points out Sims testified it was possible he and Alvarez missed some of the tissue paper that had fallen on the floor.  Dillard's suggests a statement that something is "possible" is no evidence at all, citing Lindsey v. Miami Dev. Corp., 689 S.W.2d 856, 862 (Tenn. 1985) (expressing the principle in the context of expert medical testimony).  The Court need not consider Sims' statement to rule on the pending motion.

4

Seavers admitted it was not unusual to see tissue paper on the floor. (Docket Entry No. 29-3, Seavers Depo. at 38.)

None of the five current Dillard's employees who were deposed had knowledge of any other incident in which a customer slipped on a piece of shoe box tissue paper. Dillard's produced to Plaintiff information regarding slip and fall incidents for all 13 Tennessee stores for the last five years, and none of the 108 incidents involved an alleged slip on a piece of shoe box tissue paper.

## II.  STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson,

5

477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. ANALYSIS

Business owners are not insurers of their customers' safety, but they are expected to exercise due care under all of the circumstances. Williams v. Linkscorp Tennessee Six, L.L.C., 212 S.W.3d 293, 296 (Tenn. Ct. App. 2006). "This means that the premises owner must maintain the premises in a reasonably safe condition by removing or repairing dangerous conditions or by helping customers avoid injury by warning them of such dangerous conditions." Id. To prevail on an ordinary negligence claim, a plaintiff must prove five elements: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation." Rice v. Sabir, 979 S.W.2d 305, 308 (Tenn. 1998). In order to hold a premises owner or operator liable in negligence for allowing a dangerous or defective condition to exist on the premises, a plaintiff must prove, in addition to the elements of negligence, that: (1) the condition was caused or created by the owner, operator, or his agent, or (2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident. Blair v. West Town Mall, 130 S.W.3d 761, 764 (Tenn. 2004).

Plaintiff contends that Dillard's had actual notice of the dangerous or defective condition on March 5 because Sims and Alvarez picked up white shoe box tissue paper from the white tile walkway before the store opened. This evidence, however, does not show that Dillard's had actual

6

notice of shoe box tissue paper lying on the floor in the area where Plaintiff fell after the store opened. Taking all of the evidence in the light most favorable to Plaintiff, no witness, whether employee or customer, testified that any one saw shoe box tissue paper on the tile walkway on Sunday, March 5 after the store opened but prior to the time Plaintiff fell.

Thus, the issue in this case is whether Dillard's had constructive notice of a dangerous or defective condition–in this case, the presence of shoe box tissue paper on the tile walkway. "[C]onstructive notice can be established by proof that the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition." Id. The condition can be caused by the owner's method of operation, by a third party, or by natural forces. Id. at 766. Plaintiff can prove that Dillard's had "constructive notice of the presence of a dangerous condition by showing a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence." Id. at 765-766. This approach "recognizes the logical conclusion that, when a dangerous condition occurs regularly, the premises owner is on constructive notice of the condition's existence. This places the duty on that owner to take reasonable steps to remedy this commonly occurring dangerous condition." Id. at 766. This approach also relieves plaintiffs "of the difficult burden of showing the duration of a particular occurrence so long as plaintiffs can show that the dangerous condition was part of 'a pattern of conduct, a recurring incident, or a general or continuing condition' such that its presence was reasonably foreseeable to the premises owner." Id. Whether a hazardous condition is a common occurrence of which the defendant may be considered to have constructive notice generally is a question of fact for the jury. Whitley v. Marshalls of MA, Inc., 2006 WL 1865035

7

at * 2 (Tenn. Ct. App. July 5, 2006) (citing Beske v. Opryland USA, Inc., 923 S.W.2d 544, 546 (Tenn. Ct. App. 1996)).

The Court concludes that Plaintiff has presented sufficient evidence to reach the jury because she has shown a pattern of conduct, a recurring incident, or a general or continuing condition indicating the existence of a dangerous condition that was reasonably foreseeable to Dillard's. See Williams, 212 S.W.3d at 297 (reversing a grant of summary judgment and holding a trier of fact could reasonably conclude that a golf club should have known about moss on steps and the hazard created by such a condition especially when wet). Testimony establishes that Dillard's holds clearance shoe sales twice per year and other shoe sales at other times. During these sales, including sales in which 75%-off shoe boxes are de-tissued, white shoe box tissue paper makes its way to the floor of the ladies' shoe department, including on the white tile walkway. Plaintiff disputes whether all of the 75%-off shoes on sale on March 5 were de-tissued. Sims testified that 75%-off shoes are de-tissued on the sales floor and that it is difficult for sales associates to keep the floor clean during sales. Even when shoe boxes are de-tissued, customers also ask to try on regular price shoes and tissue paper ends up on the floor. Shoes marked off 50% are not de-tissued, yet customers have full access to the shoes, and tissue paper falls to the floor.

Sims and Alvarez picked up tissue paper from the tile walkway on March 5 in the hours between a 50%-off sale and a 75%-off sale. Employees Clark and Alvarez saw tissue paper on the floor after Plaintiff fell, and Clark told Plaintiff she slipped on tissue paper. Clark and Plaintiff's friend, Ms. Moore, picked up paper from the walkway after Plaintiff fell. According to Plaintiff, while she was waiting for medical assistance, another woman told her she nearly fell in the same spot sometime earlier that day. Sims and other employees had previously slipped on tissue paper

8

in the stockroom. Sims had seen tissue paper on the floor "a lot" and it surprised him that someone had not previously fallen because of it.

While it is true that Dillard's historical data of reported customer incidents did not reflect any other slip and fall accident on shoe box tissue paper in any store, the potential that tissue paper might create a dangerous condition was at least informally discussed among the employees of the ladies' shoe department. Despite this concern about a potential safety hazard, the manager instructed employees to de-tissue shoes on the sales floor so that they could wait on customers simultaneously, and during large sales it was difficult for the sales associates to keep the floor clear of debris, including tissue paper. The assistant store manager conceded that it was not unusual to see shoe box tissue paper on the floor.

This case is thus similar to <u>Beske</u>, 923 S.W.2d at 546, where managers of Opryland USA, an amusement park, were aware that patrons commonly spilled beverages on concrete at the entrance to turnstiles through which they were required to pass to reach a train station. Employees "cleaned up" some of the spilled beverages by spreading the liquid with a broom to accelerate drying. <u>Id.</u> If the employees were too busy they did not clean up the spills. <u>Id.</u> The court held there was evidence of a recurrent problem of discarded beverages in the area and of defendant's failure reasonably to monitor the recurrent dangerous condition. <u>Id.</u> The court declined to hold that the trial court should have granted Opryland USA a directed verdict at trial. <u>Id.</u> at 545-546.

The instant case is distinguishable from the unpublished case of <u>Nolley v. Eichel</u>, 2007 WL 980603 (Tenn. Ct. App. April 2, 2007), on which Dillard's relies. There, the plaintiff slipped on a wet substance in a bar and fell to the floor where she cut her hand on a broken beer bottle. She did not know what the liquid was that she slipped on or how long it had been there. An employee

9

testified that he had seen broken beer bottles on the bar floor multiple times. Id. at **3-4. The court determined summary judgment was appropriate because the plaintiff did not show that beer bottles were broken and left on the floor on a regular basis; only that beer bottles were broken "multiple times." Id. at *5. Here, in contrast, the evidence shows that shoe sales occurred on a regular basis, shoe box tissue paper commonly fell to the floor during these sales, and it was difficult for employees to keep the floor clear of tissue paper during sales. Plaintiff is entitled to submit her case to the factfinder to determine whether Dillard's was on constructive notice of the dangerous condition and whether Dillard's should be held liable in negligence for Plaintiff's fall.

## IV. CONCLUSION

For all of the reasons stated, the Motion Of Defendant Dillard Tennessee Operating Limited Partnership For Summary Judgment (Docket Entry No. 19) will be denied.

An appropriate Order shall be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

10